UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GEORGE MICHAEL MACK,

                    Petitioner,

                                                Case No. 1:22-cv-130

v.

                                                Hon. Hala Y. Jarbou

MICHAEL BURGESS,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner George Michael Mack is incarcerated with the Michigan Department of Corrections at

the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following

a six-day jury trial in the Kalamazoo County Circuit Court, Petitioner was convicted of first-degree

murder and felony murder, in violation of Mich. Comp. Laws § 750.316, being a felon in

possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f,

aggravated stalking, in violation of Mich. Comp. Laws § 750.411, and two counts of use of a

firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws

§ 750.227. On December 12, 2016, the court sentenced Petitioner to life imprisonment without

parole on the murder convictions, to be served concurrently with terms of 6 to 10 years for felon-

in-possession and aggravated stalking and consecutively with concurrent 2-year terms for the

felony-firearm violations.

On February 14, 2022, Petitioner filed his initial habeas corpus petition, raising ten grounds

for relief. (ECF No. 1.) In an opinion and order (ECF Nos. 5 and 6) entered on February 28, 2022,

the Court dismissed without prejudice Petitioner's unexhausted grounds for relief, stayed his exhausted grounds, and administratively closed this matter until Petitioner filed a timely motion to amend his habeas petition to include any subsequently exhausted claims.

On May 10, 2022, Petitioner returned to this Court with a motion to amend his petition for habeas corpus (ECF No. 8), an amended habeas petition (ECF No. 9), and a brief in support thereof (ECF No. 10). In his amended petition, Petitioner asserts the following seven grounds for relief:

I.  Petitioner was denied a fair trial, and therefore Due process when a police witness interjected highly prejudicial and irrelevant testimony into evidence.

II.  Petitioner was denied his Fifth, Sixth and Fourteenth Amendment rights, when he was denied his right to testify on his own behalf-denying him his right to present an effective defense.

III.  The admission of evidence of Petitioner's July 4, 2015 assault and possession of an AK-47 Rifle violated Petitioner's right to a fair trial, and the Due Process Clause of the Fourteenth Amendment.

IV.  The prosecution made civic-duty argument and appealed to the sympathy of the jurors, in violation of Due Process.

V.  Petitioner was denied the effective assistance of trial counsel when counsel's total performance is considered.

VI.  Appellate counsel was Constitutionally Ineffective for failing to raise Grounds III-V.

VII.  Petitioner is entitled to an evidentiary hearing on these matters.

(Am. Pet., ECF No. 9, PageID.57.) Respondent asserts that Petitioner's grounds for relief lack merit.[1] (ECF No. 15.) For the following reasons, the Court concludes that Petitioner has failed to

---

[1] Respondent also contends that a part of one of Petitioner's grounds for relief is unexhausted. (ECF No. 15, PageID.140.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2).

set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.      Factual Allegations

The Michigan Court of Appeals described the events underlying Petitioner's convictions as follows:

> [Petitioner's] convictions arise out of incidents involving his girlfriend, Erica Bell, which occurred in July and August 2015, and culminated in the shooting death of Erica's brother, Edward Bell, on August 9, 2015.
>
> Testimony and evidence established that [Petitioner] came to the home that he and Erica had previously shared on 1330 North Rose Street in Kalamazoo, Michigan. Edward, Erica, and their mother's boyfriend, Nathanael Moore, were cleaning and repairing the home after someone trashed it. Erica felt that [Petitioner] caused the damage and wanted to change the locks and alarm code. Erica and [Petitioner] argued, and Edward intervened.
>
> The evidence showed that [Petitioner] left the home and returned minutes later with an AK-47 assault-style rifle. He entered the home at the side door where Moore was changing the lock, told Moore that the dispute did not involve him, and Moore retreated to the driveway. [Petitioner] then confronted Edward and Erica, who were standing in the kitchen. After a brief conversation, [Petitioner] fired several shots into the kitchen. Evidence showed that one bullet struck Edward in the back and perforated his lung. Another bullet blasted through his arm. Edward crawled out onto the deck behind the home and died.

*People v. Mack*, No. 336282, 2018 WL 3862096, at *1 (Mich. Ct. App. Aug. 14, 2018).

Jury selection for Petitioner's trial occurred on November 8, 2016. (Trial Tr. I, ECF No. 16-4.) Over the course of four days, the jury heard testimony from numerous individuals, including law enforcement officers, laboratory specialists from the Kalamazoo Department of Public Safety's crime lab, Erica Bell, and Nathaniel Moore. (Trial Tr. II, III, IV, and V, ECF Nos. 16-5, 16-6-, 16-7, and 16-8.) On November 17, 2016, after about three hours of deliberation, the jury reached a guilty verdict. (Trial Tr. VI, ECF No. 16-9, PageID.1392.) Petitioner appeared before the trial court for sentencing on December 12, 2016. (ECF No. 16-10.)

3

Subsequently, Petitioner, through appointed appellate counsel, filed a motion for a new trial, arguing that trial counsel was ineffective for failing to present "either an alibi defense or self-defense." (ECF No. 16-21, PageID.1717.) The trial court held a hearing regarding Petitioner's motion on June 6, 2017. (ECF No. 16-11.) At the end of argument, the trial court denied Petitioner's motion for a new trial and his motion for a *Ginther*[2] hearing regarding ineffective assistance. (*Id.*, PageID.1416.)

Petitioner, with the assistance of counsel, then appealed his convictions and sentences to the Michigan Court of Appeals. Petitioner raised the following issues in his counseled brief: (1) Petitioner was deprived of a fair trial and due process when the trial court allowed "gruesome" photographs of the deceased to be admitted; (2) Petitioner was denied a fair trial when "a police witness interjected highly prejudicial and irrelevant testimony into evidence and trial counsel was ineffective for failing to object"; and (3) the trial court abused its discretion by failing to hold an evidentiary hearing regarding Petitioner's ineffective assistance of counsel claims. (ECF No. 16-21, PageID.1739.)

Petitioner also filed a *pro per* supplemental brief, raising the following issues: (1) counsel was ineffective during plea negotiations, leading Petitioner to reject a plea offer that he would have accepted were it not for counsel's negligence; and (2) ineffective assistance of appellate counsel. (*Id.*, PageID.1807.) Petitioner subsequently filed a supplemental *pro per* supplemental brief, asserting the following issues: (1) Petitioner was deprived of his right to testify, in violation of the Fifth, Sixth, and Fourteenth Amendments; and (2) ineffective assistance of trial counsel. (*Id.*, PageID.1829–1839.)

---

[2] A hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973) allows a criminal defendant to proffer facts or evidence in support of a claim of ineffective assistance of counsel. *Ceasor v. Ocwieja*, 655 F. App'x 263, 266, 271 (6th Cir. 2016).

In an opinion entered on May 17, 2018, the court of appeals affirmed Petitioner's convictions and sentences. *People v. Mack*, No. 336282, 2018 WL 2269665, at *1 (Mich. Ct. App. May 17, 2018). Petitioner, through counsel, subsequently moved for reconsideration, asserting that the court of appeals failed to address the two issues Petitioner had raised in his supplemental *pro per* supplemental brief. (ECF No. 16-21, PageID.1651.) On August 14, 2018, the court of appeals granted Petitioner's motion for reconsideration and vacated its initial opinion. (*Id.*, PageID.1649.) In a new opinion entered that same day, the court of appeals again affirmed Petitioner's convictions and sentences. *Mack*, 2018 WL 3862096, at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 30, 2019. *See People v. Mack*, 925 N.W.2d 860 (Mich. 2019).

On July 17, 2020, Petitioner, through counsel, filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 16-13.) Petitioner asserted the following grounds for relief in his motion: (1) his two first-degree murder convictions and sentence for one death violated double jeopardy; (2) there was insufficient evidence presented to support the jury's verdict; (3) the admission of Petitioner's July 4, 2015, assault and possession of an AK-47 violated Michigan Rule of Evidence 404(b) and the Fourteenth Amendment's Due Process Clause; (4) the prosecutor committed misconduct by making a civic duty argument and appealing to the sympathy of the jurors; (5) trial counsel was ineffective for failing to object to the prosecutor's civic duty argument; and (6) appellate counsel was ineffective for failing to raise the foregoing claims. (ECF No. 16-12, PageID.1420–1421.) On March 19, 2021, the trial court held a hearing regarding Petitioner's motion. (ECF No. 16-19.) On April 5, 2021, the trial court entered an order granting in part and denying in part Petitioner's motion. (ECF No. 16-20.) The court granted Petitioner's motion with respect to his double jeopardy argument and noted that the judgment of sentence

would be amended "to indicate one conviction for first degree murder supported by two theories, premeditated and felony murder related to aggravated stalking." (*Id.*, PageID.1635.) The court denied Petitioner's motion as to all other grounds. (*Id.*)

On November 22, 2021, the Michigan Court of Appeals denied Petitioner's application for leave to appeal the denial of his Rule 6.500 motion. (ECF No. 16-22, PageID.1845.) Petitioner subsequently filed a *pro per* application for leave to appeal to the Michigan Supreme Court. (ECF No. 16-24, PageID.2130–2174.) As noted above, while that application for leave was still pending, Petitioner filed his initial habeas petition. In an opinion and order (ECF Nos. 5 and 6) entered on February 28, 2022, the Court dismissed without prejudice Petitioner's unexhausted grounds for relief, stayed his exhausted grounds, and administratively closed this matter until Petitioner filed a timely motion to amend his habeas petition to include any subsequently exhausted claims. Shortly thereafter, on May 3, 2022, the supreme court denied Petitioner's application for leave to appeal. (ECF No. 16-24, PageID.2129.) This amended § 2254 petition followed.

## II.    Request for an Evidentiary Hearing

As his seventh ground for relief, Petitioner contends that this Court should hold an evidentiary hearing. (Am. Pet., ECF No. 9, PageID.57.) Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new evidence at an evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the statute:

> As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule

6

of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner, like Mammone, does not rely upon any new rule of constitutional law, nor does his claim rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, Petitioner's request for a hearing, characterized as a seventh ground for relief, will be denied.[3]

---

[3] To the extent that Petitioner contends that the trial court erred by not holding an evidentiary hearing regarding Petitioner's claims of ineffective assistance, such a claim is not cognizable on federal habeas review. *See Simpson v. Jones*, 238 F.3d 399, 406–07 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982)). In addition, "the Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir. 1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002)). "[T]he traditional function of the writ is to secure release from illegal custody," *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), but a due process claim with respect to post-conviction proceedings, even if resolved in Petitioner's favor, would not impact Petitioner's custody. In reviewing such a claim, the Court "would not be reviewing any matter directly pertaining to" that custody. *Cress*, 484 F.3d at 853 (quoting *Kirby*, 794 F.2d at 247). If this Court were to conclude that the trial court erred in denying Petitioner an evidentiary hearing, Petitioner would not automatically be released from custody or be granted a new trial.

7

III.     **AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

8

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## IV.   Discussion

### A.   Grounds I and III—Evidentiary Issues

#### 1.   Ground I—Officer Millard's Testimony

As his first ground for relief, Petitioner avers that he was denied a fair trial and, therefore, due process when a police witness (Officer Millard) "interjected highly prejudicial and irrelevant testimony into evidence." (Am. Pet., ECF No. 9, PageID.57.) Specifically, Petitioner is referring to "testimony regarding prior bad acts and Petitioner's probation/parole status." (Br. Supp. Am. Pet., ECF No. 10, PageID.70–71.)

Petitioner, through counsel, raised this due process claim on direct appeal. The Court of appeals rejected his claim pursuant to state law, stating:

At trial, the jury heard that police officers had responded to the home that [Petitioner] had once shared with Erica for calls involving domestic violence and that one call involved a firearm. Erica also informed the jury without objection that [Petitioner] sold illegal narcotics for a living and had owned numerous firearms. Thus, the jury had information that [Petitioner] had engaged in illegal activities and that he routinely carried or possessed firearms, which included an assault-style weapon that was seized by officers during an incident of domestic violence.

After this testimony, Millard testified that he had patrolled the area where Erica and [Petitioner] lived and that he had been involved with a law enforcement team that specialized in drug and weapon offenses. Millard testified with respect to the domestic violence incident that Erica described as having happened on July 4, 2015. He stated that he did not respond to 1330 North Rose, but instead went to [Petitioner's] home address on Burdick Street. He explained that he knew where [Petitioner] lived from patrolling and from previous contact with him.

The trial court asked Millard on behalf of the jury how he knew [Petitioner] and "what interactions had you had?" Milliard stated in reply:

> I patrol that area quite frequently, specifically the 1300 block of North Burdick is a predominantly busy area for drug related offenses and activity of that nature.
>
> At a current time—or at a previous time then the day of July 4th, [Petitioner] has been on probation or parole status.
>
> I've been involved in two searches at his home in reference to allegations that had been received to their office of which involved drug or weapons offenses at the home that he would be in violation of for a probation or parole status. From that information, if probation or parole officer would respond to the home with the assistance of us and conduct a search of the home per the conditions of that situation. On both times we went there on that information, we did not locate guns, did not locate weapons, it was merely information that they had received and were doing a check on to validate that information.
>
> I've dealt with [Petitioner] before in the area for driving on a suspended license status but I take pride in the fact that when I patrol a particular area and specifically the area that I work, that block there, it's imperative that I know the people that are living in those specific neighborhoods. And when it comes to problem area specifically that block, the 1300 block of North Burdick, it's imperative that I know and can distinguish between the neighbors and the homes and the residences for specific incidences in relation to what we're dealing with here today. In relation to knowing the information of a potential suspect involved in a home at 1330 North Rose Street and the relations of the males and females that reside at that home to knowing where they reside in proximity to that scene, being imperative to

11

the apprehension of a suspect by letting officers know seconds of this call going out that this would be an area or a home of interest as that is where in fact resides for those officers who were responding that aren't familiar or don't know the area specifically.

On appeal, [Petitioner] argues that Millard's testimony was inadmissible, highly prejudicial, and could not be cured with a jury instruction. Specifically, he maintains that Millard implied that [Petitioner] was one of the criminals in the neighborhood, had been involved in past criminal activities, and was involved with drugs and weapons. [Petitioner] also complains that it was entirely irrelevant that Millard had searched [Petitioner's] home and caught him driving on a suspended license.

Millard did not testify that [Petitioner] was a neighborhood drug dealer. To be sure, he stated that [Petitioner] lived in a neighborhood that was known for drug and weapon offenses, but he did not state that [Petitioner] himself had been caught with drugs or illegal weapons. Rather, he stated that he took pride in knowing the residents of that neighborhood, where they resided, and the relationships between the "males" and the "females" such that he could make possible connections between homes "of interest" in "proximity" to a particular scene and give information to his less knowledgeable coworkers regarding a "potential suspect." This testimony did not involve improper character to propensity evidence. *See People v. VanderVliet*, 444 Mich. 52, 63; 508 N.W.2d 114 (1993) ("If the proponent's only theory of relevance is that the other act shows defendant's inclination to wrongdoing in general to prove that the defendant committed the conduct in question, the evidence is not admissible.").

In addition, Millard did not testify that he knew that [Petitioner] had actually been involved with drugs and weapons. Although his answer was not the model of clarity, Millard never stated that he observed [Petitioner] with drugs or weapons. He related that [Petitioner] had been on parole or probation and that he knew him and his residence because he twice helped [Petitioner's] parole officer search [Petitioner's] home after someone made "allegations" that [Petitioner] had drugs or weapons in violation of the conditions on his parole. He clarified that they did not find evidence to "validate" the allegations during the searches. Thus, although Millard did let slip that [Petitioner] was on parole before the parties submitted the stipulation to the jury, he did not offer any testimony that [Petitioner] had in fact committed any drug or weapon offenses. He simply related that he had participated in searches after someone accused [Petitioner] of possessing drugs or weapons.

To the extent that this testimony could be said to involve improper other-acts evidence, *see* MRE 404(b)(1), we note that the improper testimony involved the fact that [Petitioner] was on parole at some point in the past and that someone had made allegations against him that were not validated. Because the parties intended to offer a stipulation that [Petitioner] had been previously convicted of a felony, and it is common knowledge that felons are frequently paroled with conditions, any prejudice occasioned by Millard's testimony that [Petitioner] had been on parole

12

was minimal. Moreover, Millard did not specifically identify the offense or offenses for which [Petitioner] was on parole. He did testify generally that someone had alleged that [Petitioner] possessed drugs or weapons, but he also indicated that they did not find any drugs or weapons after they searched his home. Further, others testified that officers found heroin in the residence at 1330 North Rose, that the heroin belonged to [Petitioner], and that he sold it. Millard's testimony about the character of the neighborhood and the allegations against [Petitioner] while he was on parole were, when compared with that testimony, not particularly prejudicial. Millard did improperly inform the jury about one other act: that [Petitioner] had driven on a suspended license. Nevertheless, Millard's statement about [Petitioner] suspended license—although irrelevant—did not involve the kind of prejudice that might cause the jury to act out of bias.

When considered as a whole, we conclude that Millard's response touched on improper other-acts evidence and, for that reason, the trial court plainly erred to the extent that it allowed Millard to digress into other acts and otherwise failed to address his improper response with a jury instruction. But when considered in light of the evidence that had already been adduced and the fact that the parties intended to stipulate that [Petitioner] had a felony conviction, we further conclude that any prejudice was insignificant and paled by comparison to the strong evidence of [Petitioner's] guilt. Consequently, the trial court's failure to limit Millard's answer or to give the jury a limiting instruction on its own initiative did not affect the outcome of the trial. See *Carines*, 460 Mich. at 763.

*Mack*, 2018 WL 3862096, at *4–6.

Thus, the Michigan Court of Appeals effectively split the evidence into two categories: some of the testimony was properly admitted and some of it should not have been admitted. With regard to the evidence that was deemed properly admitted, any argument that the court of appeals' determination was wrong under state law fails to state a claim for habeas relief. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The decision of the state courts on a state law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no

13

part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68.

Even though the state law determination that the evidence was admissible is axiomatically correct, it is still possible that the admission of the evidence—that which was properly admitted and that which should have been excluded—was so fundamentally unfair that it violated the right to due process. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue").

Here, Petitioner suggests that the Court should apply the standard set forth in *Chambers v. Mississippi*, 410 U.S. 284 (1973), as applied ten years ago by the Sixth Circuit in *Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2003). (Br. Supp. Am. Pet., ECF No. 10, PageID.75.) In *Chambers*, the

14

Supreme Court concluded that the exclusion of evidence that another individual had repeatedly confessed to shooting the victim on four separate occasions denied Chambers "a trial in accord with traditional and fundamental standards of due process." *Chambers*, 410 U.S. at 302. In *Ege*, the Sixth Circuit concluded that the state court unreasonably applied *Chambers* to determine that an expert witness's testimony that the defendant was the only person in the Detroit metropolitan area that could have left a bite mark on the victim's cheek was admissible, concluding that such a statement was "without doubt highly prejudicial." *Ege*, 485 F.3d at 376.

To the extent Petitioner suggests that the court of appeals' decision is an unreasonable application of *Ege*, his reliance on that decision is misplaced. The suggestion is without merit because *Ege* is a Sixth Circuit decision, not a Supreme Court case. Even if the Michigan Court of Appeals' determination was contrary to, or an unreasonable application of, *Ege*, Petitioner would not be entitled to relief under the habeas statute because *Ege* is not "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Moreover, to the extent Petitioner is, instead, relying on *Chambers,* his reliance on that decision would also be misplaced. The Supreme Court must have confronted "the specific question presented by this case; it is not enough that a case be only "similar" to a Supreme Court case. *See Woods v. Donald*, 575 U.S. 312, 317–18 (2015) (per curiam). *Chambers* does not consider the due process implications of "prior bad acts" evidence. Because *Chambers* does not involve "'the specific kind of evidence' at issue," *Stewart*, 967 F.3d at 538, *Chambers* cannot serve as the foundation for habeas relief with regard to this claim.

Indeed, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the testimony at issue as violative of due process. *See, e.g., Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (stating that "the Supreme Court to our knowledge

15

. . .has never identified an improper-character-evidence case that" rises to the level of a due process violation). While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Although the Sixth Circuit stated that finding twenty years ago, the court continues to rely on the finding. *See, e.g.*, *Chambers v. Artis*, No. 22-1247, 2022 WL 18542503, at *2 (6th Cir. Nov. 3, 2022) (concluding that it is beyond debate that the admission of prior bad acts is not contrary to or an unreasonable application of clearly established federal law because, as *Bugh* found, "'[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'").

Accordingly, the Michigan Court of Appeals' rejection of Petitioner's challenge to the admission of Officer Millard's testimony, is neither contrary to, nor an unreasonable application of, clearly established federal law and Petitioner is not entitled to relief with respect to habeas ground I.

### 2.    Ground III—Admission of Prior Bad Acts (2015 Assault and Possession of AK-47)

As his third ground for relief, Petitioner contends that his due process rights were violated by the admission of evidence of "Petitioner's July 4, 2015 assault and possession of an AK-47." (Am. Pet., ECF No. 9, PageID.57.) Petitioner asserts that at trial, "the prosecution's stated purpose in presenting this evidence was to show" that Petitioner had violated a bond condition barring him from contacting Erica Bell, and that the violation was "an element of the charged aggravated

16

stalking offense." (Br. Supp. Am. Pet., ECF No. 10, PageID.79.) Petitioner argues, however, that the prosecution's argument fails because the facts giving rise to the bond condition were not relevant and that the risk of unfair prejudice "fair outweighed any such relevance." (*Id.*, PageID.79–80.)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court denied it, stating:

Okay. Okay. Basically—excuse me—the basic argument with regard to this matter from [Petitioner's] perspective is that introduction of his possession and his testified use of this assault rifle was inappropriate.

It was [inappropriate] to relate back to an earlier incident in which [Petitioner] likewise had this same type of assault rifle for which he was being charged and was out on bond with the bond condition that he not have contact with Erica Bell, the victim of the fir—first incidence—instant—incident, and that showing that he appeared a month later allegedly with the assault rifle at which time it was alleged that he used it and ultimately killed Edwin Bell—Edward Bell, sorry.

Introduction of that information, the prior circumstance was unduly prejudicial and would tend to violate 404(b). Argument that [Petitioner] has is that it puts in the jury's mind that this is a, quote [unquote], "bad person," not necessarily establishing that he possessed the weapon, the same weapon that he used earlier to intimidate Erica Bell and that resulted in charges being levied against him.

This Court, at the time of the trial, did note that the—one of the of elements, one of the charges levied against [Petitioner] was aggravated—aggravated stalking, which does require two separate incidences designed to harass or (inaudible) to fear into the victim in such a way that a reasonable person would fear for their physical and/or mental safety, and that this was an intentional act on—on [Petitioner's] part.

The fact of the matter is that presentation of the assault weapon in the earlier event in essence quite honestly was only I would say coincidental to the mechanism used by [Petitioner] in the case in chief. I think certainly if [Petitioner] had, for example, used a baseball bat back a month prior to that and had appeared on the scene with this assault rifle, I don't believe the parties would have raised issue with any kind of 404(b) consideration.

Both obviously created fear on the part of Erica Bell and both could in fact be utilized to show that [Petitioner] was engaged in aggravated stalking.

The matter having in essence two instances of the same weapon being used obviously creates some—some issues in terms of differentiating between the use of a veh—use of the weapon against Ms. Bell and the ultimate use of this weapon against Mr. Bell, but I do not believe it—I did not at the time of the trial and still

> do not believe that it rose to a level of the violation of 404(b), and while it does create some prejudice against [Petitioner], I believe that the necessary establishment of an element of aggravated stalking outweighs any prejudice there might be given to the fact that he in fact was using an AK-47 at the time he committed the offense.

(ECF No. 16-19, PageID.1612–1614.)

Habeas ground III is meritless for the same reasons set forth *supra* regarding habeas ground I. To the extent that Petitioner challenges the trial court's conclusion pursuant to state law, he fails to state a claim for habeas relief. *See Wainwright*, 464 U.S. at 84; *see also Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67–68. Moreover, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue, regardless of whether it was covered by Rule 404(b). *See Burger*, 515 F. App'x at 510.

Because Petitioner's due process rights were not violated by the admission of evidence regarding the July 4, 2015, assault and his possession of an AK-47, he cannot demonstrate that the trial court's rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### B.    Ground II—Right to Testify

Next, Petitioner avers that his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was denied his right to testify on his own behalf, denying him his right to present an effective defense. (Am. Pet., ECF No. 9, PageID.57.) Petitioner contends that "at no time did the trial court or his trial counsel advise him that he had a right to testify." (Br. Supp. Am. Pet., ECF No. 10, PageID.76.) This ground for relief implicates both an alleged due process violation by the trial court and alleged ineffective assistance by counsel. The Court will address the due process aspect here; the ineffective assistance aspect is addressed *infra* in Part D.2.b.

18

In a criminal trial, the protections afforded under the Constitution for "due process of law" provide that "no one shall be condemned in his person . . . without an opportunity of being heard in his own defense." *Holden v. Hardy*, 169 U.S. 366, 390–91 (1898). A criminal defendant's right to testify on his own behalf "is a fundamental right." *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007) (citing *Rock v. Arkansas*, 483 U.S. 44, 52–53 & n.10 (1987)). The right can be waived by a defendant only if done so knowingly and intelligently. *Id.* (citation omitted); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 237 (1973) ("Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.").

The Supreme Court has determined that some waivers of fundamental rights are required to be taken on the record. However, while it remains advisable, "the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intelligently waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). To retain the right, "a defendant must 'alert the trial court' that he desires to testify" or that a disagreement with defense counsel exists. *Id.* (quoting *Pelzer v. United States*, No. 96-1195, 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997)).

Petitioner raised his due process claim in his supplemental *pro per* supplemental brief, and the court of appeals rejected it, stating:

> Additionally, [Petitioner's] underlying claim that he was denied his constitutional right to testify also does not merit relief. [Petitioner] asserts that the record does not reflect his affirmative waiver of his right to testify, but [Petitioner] points to no part of the record that shows he expressed to the trial court his alleged desire to testify on his own behalf. While a criminal defendant has a due process right to testify at his or her own trial, a waiver of this right is not required to be on the record. *People v. Simmons*, 140 Mich. App. 681, 684; 364 N.W.2d 783 (1985). A defendant must claim his right to testify, without query from the trial court, or defendant is deemed

to have waived the right. *Id.* at 684-685, citing *United States v. Ives*, 504 F.2d 935, 939–940 (9th Cir. 1974). A defendant waives his right to testify if he or she "decides not to testify or acquiesces in his attorney's decision that he not testify[.]" *Simmons*, 140 Mich. App. at 685 (citation omitted); *see also People v. Harris*, 190 Mich. App. 652, 661–662; 476 N.W.2d 767 (1991). In this case, [Petitioner] waived his right to testify by not affirmatively expressing a desire to do so. *Harris*, 190 Mich. App. at 661–662; *Simmons*, 140 Mich. App. at 684–685. And, as noted, [Petitioner] cannot establish that he was prejudiced by failing to testify regarding his meritless claim of self-defense.

*Mack*, 2018 WL 3862096, at *10.

The court of appeals' determination turned principally on a factual issue—the fact that Petitioner at no time affirmatively expressed a desire to testify to the trial court. As noted *supra*, a determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531. This presumption of correctness is afforded to findings of state appellate courts, as well as the trial court. *See Sumner*, 449 U.S. at 546–47 (1981); *Smith*, 888 F.2d at 407 n.4. Here, Petitioner does not offer any new evidence to rebut the court of appeals' conclusion. Rather, he asks this Court to reconsider the same arguments already rejected by the court of appeals. The record clearly reflects that on the last day of trial, the trial court asked defense counsel if he wished to call any witnesses. (Trial Tr. VI, ECF No. 16-9, PageID.1304.) Counsel responded, "I do not, Your Honor, and we rest." (*Id.*) If Petitioner wished to testify, that is when he should have spoken up and so notified the trial court.

Furthermore, Petitioner argues only that he 'wanted to testify in order to effectively present his defense claim establishing that he acted in self-defense." (Br. Supp. Am. Pet., ECF No. 10, PageID.76.) Petitioner contends that because he did not testify, the jury did not get to hear him "explain why he felt his life was in immediate danger and why Petitioner had a right to protect and defend himself against what he saw as his life being threatened with deadly force and how he had no opportunity to retreat at the time of the deceased firing [shots] at Petitioner." (*Id.*) Although

Petitioner has not included an offer of proof outlining his purported testimony with his federal habeas petition, the record contains an affidavit that he submitted in support of his motion for a new trial. In that affidavit, Petitioner avers that Edward Bell struck him in the face, and they "started tussling with each other." (ECF No. 16-21, PageID.1721.) Petitioner contends that Edward pulled out a .38 revolver and fired a shot toward Petitioner, so Petitioner "grabbed the AK from under the kitchen sink." (*Id.*) According to Petitioner, Edward had the revolver in his hand and said, "You won't shoot nothing, I will kill you." (*Id.*) Petitioner "feared for [his] life and started to run for the door and fired some shots and dropped the gun." (*Id.*)

However, as the court of appeals noted in its discussion of Petitioner's claim that the trial court erred in not holding an evidentiary hearing regarding his claims of ineffective assistance of counsel, Petitioner's self-defense claim was meritless because he had no "legal right to be in the home on 1330 North Rose because he was prohibited from being there as a condition of his release on bond." *Mack*, 2018 WL 3862096, at *7. Petitioner, therefore, "could not present statutory self-defense as a defense to murder." *Id.* (citing Mich. Comp. Laws § 780.972(1)). The court of appeals further concluded that any common law claim of self-defense would have been meritless because

> [n]otwithstanding [Petitioner's] affidavit, the evidence at trial established that [Petitioner] left the home after a verbal dispute and threats of physical violence. The evidence showed that he then returned with an AK-47, told Moore that he did not need to get involved, and proceeded to gun down Edward. The forensic evidence showed that [Petitioner] shot Edward in the back as he ran from the kitchen and that he survived only long enough to crawl to the stairs leading down from the deck. Testimony and evidence established that Edward did not have the .38 caliber revolver found at the home in his possession and that the revolver was not loaded. There was also no evidence that a .38 caliber revolver had been fired anywhere in the house. The evidence showed that police officers arrived within minutes and that Moore and Erica did not have the opportunity to alter the crime scene to conceal evidence that Edward was armed or even coordinate their stories and agree to frame [Petitioner].

*Id.* Petitioner offers no evidence, clear and convincing or otherwise, to rebut those presumptively correct factual determinations and the Court is bound by the state appellate court's determination

that Petitioner's self-defense claims—statutory or common law—were meritless. *See Lewis*, 497 U.S. at 780; *Wainwright*, 464 U.S. at 84.  Therefore, Petitioner cannot show that his failure to testify resulted in any prejudice to his defense.

In sum, Petitioner has failed to demonstrate that the court of appeals' rejection of his due process claim premised upon a right to testify is contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to relief with respect to habeas ground II.

### C.      Ground IV—Prosecutorial Misconduct

As his fourth ground for relief, Petitioner asserts that the prosecutor violated Petitioner's due process rights by making a civic duty argument and appealing to the sympathy of the jurors. (Am. Pet., ECF No. 9, PageID.57.) First, Petitioner faults the prosecution for "introducing a gratuitous video clip that showed nothing but Erica Bell's distraught and sympathy-inducing emotional reaction to learning that her brother had died of his gunshot wounds." (Br. Supp. Am. Pet., ECF No. 10, PageID.87.) Second, Petitioner contends that the prosecutor made "an improper argument that the jury should convict on the basis of its sympathy for the victims." (*Id.*)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving

courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

### 1.    Video Tape

Petitioner faults the prosecution for "introducing a gratuitous video clip that showed nothing but Erica Bell's distraught and sympathy-inducing emotional reaction to learning that her brother had died of his gunshot wounds." (Br. Supp. Am. Pet., ECF No. 10, PageID.87.) Petitioner argues that this video "had absolutely no evidentiary value." (*Id.*, PageID.88.)

The video in question was introduced during Patrol Officer Steven Hall's testimony. Officer Hall testified that when he arrived on scene, Erica Bell "was emotional, shaking and tears pouring down her face." (Trial Tr. IV, ECF No. 16-7, PageID.1020.) Officer Hall testified that after other officers interviewed Erica Bell, Detective Gaudard told her that her brother had passed away. (*Id.*, PageID.1032.) In response, Bell became "very emotional, she dropped her stuff, was laying against the wall, made reference to Christ and was almost in a shock—or a state of shock

23

or denial." (*Id.*) Hall indicated that Bell's interview was taped. (*Id.*) The prosecutor then moved to admit the video "solely for the purposes of showing . . . Ms. Bell's response to learning the news that her brother had passed away." (*Id.*, PageID.1033.) The clip in question was transcribed as follows:

> MR. GAUDARD: Erica, I am so sorry to tell you this but your brother has passed away now.
>
> MS. BELL: Please, no.
>
> MR. GAUDARD: I am so sorry.
>
> MR. GHIRINGHELLI: It's not your fault.
>
> MR. GAUDARD: No.
>
> MS. BELL: (inaudible)—no, no, no, no, Please God, no, no, please God.
>
> MR. GHIRINGHELLI: Erica, would it be of help if we remained here with you?
>
> MR. GAUDARD: Do you want us to get somebody for you?
>
> MR. GHIRINGHELLI: Do you want us to get Nate? Nate is next door.
>
> MR. GAUDARD: I'm so sorry.
>
> MS. BELL: (inaudible)
>
> MR. GAUDARD: I know it is.
>
> MS. BELL: Can you take me to Nate, please? Oh my God—(inaudible)—

(*Id.*, PageID.1034.)

Petitioner raised this argument in his Rule 6.500 motion, and the trial court rejected it at the hearing, stating:

> As to the question of the use of the clip regarding Erica Bell, again, the case—facts of the case would tend to at least raise some question as to whether given the earlier incident involving [Petitioner], and Edward Bell, and Nathanael Moore who were both there, and then the subsequent interaction which resulted in Mr. Bell's demise, there is some question whether in fact the—whether in fact Erica Bell might in fact have gotten with Nathanael Moore to in essence concoct the story.

The facts would indicate that Erica actually ran off as the shooting occurred, ended up at a neighbor's house, and apparently—at least according to the Court's recollection of the factual events—apparently had no opportunity to have conversation with Nathanael Moore to in fact concoct this particular story as set forth by [Petitioner].

That all the more makes it, in the Court's view, appropriate to establish that the victim/sister victim would react as she reacted upon being I guess protected, if you will, by the police and interrogated and informed—during her custody of the police officer and being informed of her brother's death.

And while it is painful to watch, I think it is also as a basis for—has an evidentiary value to it, both from the standpoint of what was said and what was not said: that her recitation of what happened and Mr. Moore's recitation of what happened did in fact fit with the physical evidence that existed and was not—was clearly not based upon the events as they turned out. It was not based on any type of collusion or communication that would have and nor to the detriment of [Petitioner].

(ECF No. 16-19, PageID.1621–1622.)

The Sixth Circuit has noted that a "prosecutor may rely on good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). This is true "whether or not the ruling itself was correct." *Frazier v. Huffman*, 343 F.3d 780, 792 (6th Cir. 2003). Although Petitioner has phrased his claim as a prosecutorial misconduct claim, at bottom, Petitioner takes issue with the trial court's decision that the video tape in question was admissible. As discussed above, however, Petitioner cannot challenge that ruling on federal habeas corpus review. *See Estelle*, 502 U.S. at 67–68. "It certainly does not violate clearly established federal law for a prosecutor to rely on evidentiary rulings made by the trial court." *Key v. Rapelje*, 634 F. App'x 141, 147 (6th Cir. 2015). Here, the prosecution relied upon the trial court's admission of the video to argue against any assertion by Petitioner that Bell and Moore colluded to "concoct" a story regarding what happened on the night of the incident. The prosecution was well within its right to rely on the trial court's admission of the video tape to make that assertion. Thus, Petitioner has not demonstrated that the trial court's rejection of his

claim is contrary to, or an unreasonable application of, clearly established federal law, and he is not entitled to relief with respect to this aspect of habeas ground IV.

### 2. Civic Duty Argument

Petitioner contends that the prosecutor made "an improper argument that the jury should convict on the basis of its sympathy for the victims." (Br. Supp. Am. Pet., ECF No. 10, PageID.87.) Petitioner takes issue with the following statements made by the prosecutor during closing arguments:

> Live for everything, die for nothing. A motto that Edward Bell apparently believed in so much he had it tattooed on his body. But he did die; he was shot, he was murdered. He was shot down in cold blood for defending his sister. He was murdered for that reason and that means, ladies and gentlemen, among us there is a murderer. And you've heard the evidence in this case and that evidence says that the murderer's name is George Michael Mack, the defendant in this case who is seated right behind me.
>
> * * *
>
> Live for everything, die for nothing. Don't let Edward Bell die for nothing; find the defendant George Michael Mack guilty of all charges. Thank you.

(Trial Tr. VI, ECF No. 16-9, PageID.1307, 1344.)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court orally denied it at the hearing regarding Petitioner's motion, stating:

> The Court—the Court is very cautious during trial in making sure parties in essence stick to the facts or the issue at hand. It is very easy, particularly in so-called capital cases, for one or the other side to bring emotion into the equation.
>
> The jury's duty is in fact to identify the facts and what happened and to come back with a verdict based upon how they view the evidence that's been presented and what facts that lead them to—to determine.
>
> Contacts of this particular case were very interesting in terms of the dynamics between the Defendant and the People, and it is clear from the Court—from the Court's perspective that there was at least some question raised by defense in terms of whether in fact—as has been posited now—whether in fact there was some element of an accident involving Edward Bell's death, and in that particular context I do believe that it is appropriate for the prosecutor to make statements that whether

26

> it was the Defendant or Mr. Moore or whomever, this was no accident; that this
> was an intentional act.
>
> They make the argument that the jury is to interpret the facts that are laid out for
> them in the context of how the prosecutor sees the case. Just like it's the defense
> counsel's right to lay out the facts in how he views the case.

(ECF No. 16-19, PageID.1620–1621.)

Petitioner's claim begs the question: what is a "civic duty" argument? There is no clearly established federal law on that point. The Supreme Court has frequently referenced jury service as a "civic duty," *see, e.g.*, *Dietz v. Bouldin*, 136 S. Ct. 1885, 1896 (2016) ("Juries are of course an integral and special part of the American system of civil justice. Our system cannot function without the dedication of citizens coming together to perform their civic duty and resolve disputes"), but the Court has never defined, or even commented on, "civic duty" arguments.

Although the Supreme Court has not mentioned "civic duty" arguments, it has commented on the dangers of prosecutorial argument that is "wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." *Viereck v. United States*, 318 U.S. 236, 247 (1943). The prosecutor's challenged argument in *Viereck* was as follows:

> In closing, let me remind you, ladies and gentlemen, that this is war. This is war,
> harsh, cruel, murderous war. There are those who, right at this very moment, are
> plotting your death and my death; plotting our death and the death of our families
> because we have committed no other crime than that we do not agree with their
> ideas of persecution and concentration camps.
>
> This is war. It is a fight to the death. The American people are relying upon you
> ladies and gentlemen for their protection against this sort of a crime, just as much
> as they are relying upon the protection of the Men who man the guns in Bataan
> Peninsula, and everywhere else. They are relying upon you ladies and gentlemen
> for their protection. We are at war. You have a duty to perform here.
>
> As a representative of your Government I am calling upon every one of you to do
> your duty.

*Id.* at 247 n.3. The *Viereck* Court went on to heartily condemn that argument:

> At a time when passion and prejudice are heightened by emotions stirred by our participation in a great war, we do not doubt that these remarks addressed to the jury where highly prejudicial, and that they were offensive to the dignity and good order with which all proceedings in court should be conducted. We think that the trial judge should have stopped counsel's discourse without waiting for an objection. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 [(1935)].

*Id.* at 248. Although the *Viereck* Court's statement may be stirring, and though it could provide the foundation for a "civic duty" argument proscription, it is entirely dicta. The Court specifically acknowledged that the "duty" argument was not the error that prompted reversal, but was simply another issue that "might well have placed the judgment of conviction in jeopardy." *Id.* at 247. This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655.

Labeling an argument a "civic duty" argument does not render that argument prosecutorial misconduct. The determination of impropriety requires going deeper; the deeper inquiry is whether the argument is irrelevant such that its only purpose would be to arouse passion and prejudice. The fact that the argument invites the jurors to satisfy a civic duty is relevant to that analysis, but it is not dispositive.

In *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991), the Sixth Circuit Court of Appeals considered exactly how the "civic duty" analysis fits within the more fundamental inquiry into whether the prosecutor has attempted to appeal to the jurors' passion or prejudice:

> Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible. *See*

*Henderson v. United States*, 218 F.2d 14, 19–20 (6th Cir.), *cert. denied*, 349 U.S. 920 (1955).[2] Our determination of whether comments are calculated to incite prejudice and passion in the jury is informed by the Supreme Court opinion in *Viereck*.

\* \* \*

The remarks in the instant case are analogous to the comments adjudged inflammatory and prejudicial in *Viereck*. The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers. The correlation between the community interest comments and the wider social-political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice. The Supreme Court in *Viereck* framed the inquiry to incorporate both the purpose and effect of the comments. In that case, in the light of contemporaneous events, which had great impact on the emotions and perceptions of jurors, the remarks "could only have . . . arouse[d] passion and prejudice." *See* [*Viereck*, 318 U.S.] at 247.

––––––––––––––––––––––––––––

[2] Our holding in *Henderson* and the result reached in *Alloway* reflect a general rule followed by other circuits as well. In *United States v. Shirley*, 435 F.2d 1076 (7th Cir. 1970), the Seventh Circuit stated that the prosecutor's closing remarks concerning the increasing number of cars being stolen did not overstep the bounds of fairness and propriety and could not have worked a substantial injury to the defendant in denying him a fair trial because, even though the statements were not particularly relevant and had no bearing on the guilt or innocence of the defendant, the remarks did not contain an emotional appeal to the jurors' self-interest designed to arouse their prejudice against the defendant. *Id.* at 1079.

The Eighth Circuit has also stated, in a case where the prosecutor told the jurors that they were the public's last shield and the district court instructed the jury to disregard the remark, that unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible. *United States v. Lewis*, 547 F.2d 1030, 1036 (8th Cir.), *cert. denied*, 429 U.S. 1111 (1976). Similarly, the Eleventh Circuit, in *United States v. Kopituk*, 690 F.2d 1289, 1342–43 (11th Cir.1982), *cert. denied*, 463 U.S. 1209 (1983), stated that appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not *per se* impermissible. However, the remarks complained of in *Kopituk* were found by the court to have approached the line demarcating impermissible comment calculated to incite the jury against the accused, but not to have crossed the line into the realm of impropriety and prejudice by directly suggesting that the jurors had personal stakes in the outcome of the case.

*Solivan*, 937 F.2d at 1151–52. The *Solivan* court went on to review several decisions where circuit courts of appeal had concluded that the argument crossed the line. For example, in *United States v. Barker*, 553 F.2d 1013, 1024–25 (6th Cir. 1977), the court concluded that it was improper "for a prosecutor to suggest that unless the defendant was convicted it would be impossible to maintain 'law and order' in the jurors' community." *Solivan*, 937 F.2d at 1152. Additionally, the *Solivan* court referenced several cases where prosecutors had gone too far in suggesting that their role as jurors permitted them to do something about drug trafficking in their community. *Id.* at 1152–53.

The *Solivan* court contrasted those cases—cases where the jury was asked to look beyond the evidence against a particular defendant and consider the impact of their verdict on societal problems generally—with the decision in *United States v. Alloway*, 397 F.2d 105 (6th Cir. 1968). In *Alloway*, the court considered the propriety of the following argument:

> You, the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate [armed robbery]. . . .

*Alloway*, 397 F.2d at 113. The *Solivan* court explained why the "conscience of the community" argument in *Alloway* was acceptable while similar argument in *Barker* and *Solivan* was not:

> The comments by the prosecutor in *Alloway* and the comments complained of in the instant case are only vaguely similar. The remarks in this case appear to us to have been deliberately injected into the proceedings to incite the jury against defendant. Given the nature of this case, involving a cocaine transaction, and the wider social context which the prosecutor sought to bring to bear on the proceedings, the national drug problem, the purpose and effect of the comments could have only been to arouse passion and prejudice. *See Viereck*, 318 U.S. at 247. We determined that the statements made in *Alloway* were not deliberately injected into the proceedings to inflame the jury. *See* 397 F.2d at 113. Indeed, examined in the light of the nature of the case and the wider social context in which the case was prosecuted, it is clear that the government's statements in *Alloway* were devoid of the sort of inflammatory content inherent in the prosecutor's statements in this case precisely because there was no comparable specific wider context of national attention and concern present in *Alloway* pertaining to armed robbery. The comments in *Alloway* did not attempt to compare or to associate the defendant with a feared and highly publicized group, such as drug dealers, as did the prosecutor in

this case. The prosecutor in *Alloway* did not go beyond a mere allusion to the general need to convict guilty people, as did the prosecutor in this case, and bring to bear upon the jury's deliberations the attendant social consequences of defendant's criminal conduct or urge the jury to convict an individual defendant in an effort to ameliorate society's woes.

* * *

In *Alloway*, we were presented with remarks by the prosecutor which alluded only to the general criminality of the defendant's conduct in robbing a bank and the general community need to convict guilty people. The comments at issue in *Alloway* constituted a general plea which did not even specifically refer to the crime of armed robbery. Moreover, armed robbery was not and is not the specific focus of national attention as is the drug problem. In the instant case, we find that *Alloway* is inapposite because, in this case, the prosecutor went beyond the scope of the prosecutor's statements in *Alloway*, which constituted a mere innocuous reference to the community or societal need to convict guilty people.

*Solivan*, 937 F.2d at 1154–55.[4] Neither *Solivan* nor *Alloway* are of particularly recent vintage, but more recently, the Sixth Circuit relied on the analysis in *Solivan* and described it as "one of the most cited cases in this circuit regarding attorney appeals to the community conscience . . . ." *United States v. Hall*, 979 F.3d 1107, 1122 (6th Cir. 2020).

When considered against the backdrop of the prosecutorial arguments in *Solivan* and *Alloway*, the prosecutor's argument in Petitioner's case is more akin to the permissible *Alloway* argument. There is no aspect of the prosecutor's argument here that invited the jurors to rely on anything other than the record evidence to reach the verdict sought by the prosecutor. There is no express or implied invitation to fulfill a civic duty by convicting Petitioner. Rather, the prosecutor summarized the evidence presented and urged the jury to convict Petitioner of Edward Bell's murder on that basis. Petitioner has not demonstrated that the prosecutor engaged in misconduct

---

[4] The *Solivan* court also noted that "[t]he district court in *Alloway* subsequently instructed the jury to base its verdict solely on the evidence and to consider the prosecutor's argument only as it corresponded with the evidence." *Solivan*, 937 F.2d at 1154. But separate and apart from the remedial instruction, the Sixth Circuit concluded that the argument was not prosecutorial misconduct because it was not, by purpose or effect, intended to inflame the passion and prejudice of the jury.

and made an impermissible "civic duty" argument during closing arguments. Because Petitioner has not shown that the trial court's rejection of his "civic duty" argument is contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief with respect to this aspect of his prosecutorial misconduct claim.

In sum, Petitioner has not demonstrated that the trial court's rejection of his prosecutorial misconduct claims is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to relief with respect to habeas ground IV.

### D.     Grounds V and VI—Ineffective Assistance of Trial and Appellate Counsel

As his fifth ground for relief, Petitioner contends that he was denied "the effective assistance of trial counsel when counsel's total performance is considered." (Am. Pet., ECF No. 9, PageID.57.) Specifically, Petitioner faults trial counsel for: (1) failing to object to Officer Millard's testimony or move for a mistrial because of such testimony; (2) failing to inform Petitioner of his right to testify on his own behalf; and (3) failing to object to the prosecutor's civic duty argument. (Br. Supp. Am. Pet., ECF No. 10, PageID.92–99.) As his sixth ground, Petitioner faults appellate counsel for not raising what Petitioner asserts as habeas grounds III, IV, and V. (Am. Pet., ECF No. 9, PageID.57.)

### 1.     Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v.*

*Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner asserted his claim that counsel should have objected to Officer Millard's testimony or moved for a mistrial, as well as his claim that counsel was ineffective for failing to advise him regarding his right to testify, on direct appeal, and the court of appeals set forth the following standard to address Petitioner's claims:

> To establish a claim of ineffective assistance of counsel, defendant must show that trial counsel's failure to object or request a curative instruction fell below an objective standard of reasonableness under prevailing professional norms and whether there is a reasonable probability that without this error, the result of the proceedings would have been different. *Yost*, 278 Mich. App. at 387.

*Mack*, 2018 WL 3862096, at *6. The cases cited within *Yost* identify *Strickland* as the source of the standard. *See People v. Toma*, 613 N.W.2d 694, 803 (Mich. 2000). Thus, there is no question that the court of appeals applied the correct standard.

Petitioner raised his remaining claim of ineffective assistance of trial counsel, as well as his claim of ineffective assistance of appellate counsel, in his Rule 6.500 motion. The trial court held a hearing regarding Petitioner's motion and orally denied his ineffective assistance claims. The trial court then entered a short order memorializing the oral decision. (ECF No. 16-20.) A

review of the transcript indicates that the trial court orally stated the following standard regarding ineffective assistance claims:

> But ineffective assistance is ground really on two things. One, that the performance of counsel, whether it's trial or appellate, fell below standards appropriate for advocates at those particular levels, and for the relief to be granted, the Court has to make a determination—in the words of the assistant prosecutor—that the failure on the part of the advocate was outcome determinative.

(ECF No. 16-19, PageID.1627.) Although the court did not cite to case law, the standard articulated is functionally identical to the standard set forth above. Indeed, the Michigan Supreme Court equates "outcome determination" to "prejudice" when separating plain from harmless error, *People v. Vaughn*, 821 N.W.2d 288, 303 (Mich. 2012), and when evaluating the *Strickland* standard for ineffective assistance of counsel, *People v. Harris*, 840 N.W.2d 307, 308 (Mich. 2013). Thus, there is no question that the trial court also applied the correct standard.

The state courts' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court

> decision would be in accord with our decision in *Strickland* as to the legal
> prerequisites for establishing an ineffective-assistance claim, even assuming the
> federal court considering the prisoner's habeas application might reach a different
> result applying the *Strickland* framework itself. It is difficult, however, to describe
> such a run-of-the-mill state-court decision as "diametrically different" from,
> "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our
> clearly established precedent. Although the state-court decision may be contrary to
> the federal court's conception of how *Strickland* ought to be applied in that
> particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the state courts applied the correct standard. Petitioner can only

overcome the deference afforded state court decisions if the determination regarding Petitioner's

ineffective assistance claims is an unreasonable application of *Strickland* or if the state courts'

resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court,

therefore, will consider whether the state courts reasonably applied the standard for Petitioner's

claims of ineffective assistance of counsel.

## 2.    Ground V—Ineffective Assistance of Trial Counsel

### a.    Failure to Object to Testimony or Move for a Mistrial

Petitioner first faults trial counsel for failing to "object to Officer Millard's highly

prejudicial testimony or move for a mistrial." (Br. Supp. Am. Pet., ECF No. 10, PageID.92.)

According to Petitioner, counsel "should have immediately objected to this testimony, or requested

that the jury be excused so that a curative instruction could immediately be given." (*Id.*) Instead,

counsel "did nothing. He waited for 10 full pages of transcript to place an objection on the record,

and then he objected only that the testimony was 'rambling.'" (*Id.*)

Petitioner, through counsel, raised this claim on direct appeal, and the court of appeals

rejected it, stating:

> The jury already heard evidence that [Petitioner] was involved with drugs and
> incidents of domestic violence, and Millard's rambling answer to the jury question
> did not involve specific allegations that [Petitioner] had been involved with drugs
> or illegal weapons. Indeed, he stated that they were unable to validate the
> allegations that [Petitioner] had drugs or weapons. On this record, even if a

36

reasonable trial lawyer in defense counsel's position would have objected and requested a curative instruction, the prejudice occasioned by Millard's answer was not such that it had any effect on the jury's verdict. See *id.*

*Mack*, 2018 WL 3862096, at *6.

As set forth *supra*, the court of appeals concluded that Officer Millard's testimony regarding the nature of the neighborhood and how it was "known for drug and weapon offenses" did not "involve improper character to propensity evidence." *Id.* at 5. With respect to the testimony that the court of appeals concluded was properly admitted, it was not professionally unreasonable for trial counsel to fail to object to this testimony, as any objection would have been futile. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (stating that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.").

The court of appeals noted that the following testimony by Officer Millard was improper: (1) that Petitioner had been on parole at some point; (2) that someone had made allegations against Petitioner that were not validated; and (3) that Petitioner had once driven on a suspended license. *See Mack*, 2018 WL 3862096, at *5. With respect to the testimony regarding Petitioner's parole status, however, the court of appeals noted that any prejudice was minimal because "the parties intended to stipulate that [Petitioner] had a felony conviction, and it is common knowledge that felons are frequently paroled with conditions." *Id.* Given that stipulation, Petitioner has not offered any evidence to refute the court of appeals' conclusion that Petitioner was not prejudiced by Officer Millard's testimony regarding Petitioner's parole status.

Likewise, while Officer Millard testified that someone had accused Petitioner of possessing drugs and weapons, and that a search of Petitioner's residence revealed neither, the court of appeals noted that "others [had] testified that officers found heroin in the residence at 1330 North Rose, that the heroin belonged to [Petitioner], and that he sold it." *Id.* Petitioner does not challenge the admission of that testimony. In light of that testimony, the Court agrees with the court of appeals

that counsel's failure to object to Officer Millard's testimony regarding the accusations made against Petitioner were not prejudicial, especially considering that an investigation determined that the allegations referenced by Millard proved to be unfounded.

Finally, Officer Millard improperly testified that Petitioner had once driven on a suspended license. The court of appeals noted that this statement was irrelevant. *Id.* That "prior bad act" also paled in comparison to the "bad acts" that formed the basis of the charges as well as the "prior bad acts" that were the subject of properly admitted testimony. As discussed *supra*, overwhelming evidence established that Edward Bell did not have in his possession a loaded .38 caliber revolver, as argued by Petitioner, and that there was no evidence that the revolver was discharged anywhere inside the house. Instead, the evidence established that Petitioner left the home after a verbal argument with Erica and Edward Bell, returned to the home with an AK-47, and ultimately shot Edward in the back. Such testimony was properly admitted before the jury. Similarly, as stated above, there was properly admitted "prior bad act" evidence regarding drugs and a weapon. In light of that evidence, the suggestion that a passing reference to a driving offense swayed the jury to find Petitioner guilty of murder is absurd.

Overall, the improper testimony by Officer Millard was paltry when compared to the overwhelming evidence of Petitioner's guilt. Petitioner, therefore, has not established that he was prejudiced by counsel's failure to object to such testimony, and has not demonstrated that the court of appeals' rejection of his claim is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief with respect to this assertion of ineffective assistance.

**b.      Failure to Advise Petitioner Regarding Right to Testify**

Next, Petitioner faults trial counsel for failing to advise him regarding the right to testify.

Petitioner contends that counsel's failure "not only denied him his right to testify on his own

behalf, but also to present an effective self-defense claim." (Br. Supp. Am. Pet., ECF No. 95.)

The court of appeals rejected this claim, stating:

> [Petitioner] does not support these assertions with either his own affidavit or an
> affidavit of trial counsel. As such, [Petitioner] has failed to establish the factual
> predicate of his claim of ineffective assistance of counsel. *See Carbin*, 463 Mich.
> at 600-601. Moreover, calling witnesses and the presentation of evidence are
> matters of trial strategy. *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d
> 623 (2012). [Petitioner] has not overcome the strong presumption that not
> presenting [Petitioner's] testimony was reasonable trial strategy. *See Riley*, 468
> Mich. at 140. Further, because [Petitioner] asserts that his testimony would have
> supported his self-defense claim and because this Court, based on [Petitioner's]
> own affidavit submitted with his motion for an evidentiary hearing, has already
> determined that [Petitioner's] self-defense claim was meritless, [Petitioner] cannot
> establish that he was prejudiced by his failure to testify.

*Mack*, 2018 WL 3862096, at *10.

Petitioner offers no evidence to rebut the presumption of correctness afforded to the court

of appeals' factual determination that Petitioner presented no evidence to support the claim that

counsel did not advise Petitioner of the right to testify. Moreover, as discussed above, Petitioner

cannot demonstrate any prejudice from counsel's purported failure to advise him regarding the

right to testify because Petitioner's self-defense claim was meritless, particularly because of the

lack of evidence suggesting that the .38 caliber revolver was in Edward's possession and was fired

anywhere in the house. Petitioner has failed to demonstrate that the court of appeals' rejection of

his claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not

entitled to relief with respect to this claim of ineffective assistance.

### c.      Failure to Object to "Civic Duty" Argument

Petitioner next faults trial counsel for failing to object to the prosecutor's alleged "civic duty" arguments, discussed *supra*. The trial court orally rejected this claim, stating:

> Given the Court's prior ruling with regard to the pros—the alleged prosecutorial misconduct, in essence saying that the Court did not believe that it was misconduct or resort to the, quote, "civic duty" argument that it is disallowed in these types of cases, given that prior ruling, it clearly would not be ineffective assistance of counsel for trial counsel—trial defense counsel not to raise objection at the time.

(ECF No. 16-19, PageID.1624.) For the reasons set forth above, as a matter of federal constitutional law, the Court has agreed with the trial court that no prosecutorial misconduct occurred. Thus, for purposes of Petitioner's claim of ineffective assistance, "omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752; *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner has not demonstrated that the trial court's rejection of this claim of ineffective assistance is contrary to, or an unreasonable application of *Strickland*, and, therefore, he is not entitled to relief with respect to this claim.

In sum, Petitioner fails to demonstrate that the state courts' rejection of his various ineffective assistance of trial counsel claims is contrary to, or an unreasonable application of, *Strickland*. Accordingly, Petitioner is not entitled to relief with respect to habeas ground V.

### 3.      Ground VI—Ineffective Assistance of Appellate Counsel

As his sixth ground for relief, Petitioner faults appellate counsel for not raising what Petitioner asserts as habeas grounds III, IV, and V. (Am. Pet., ECF No. 9, PageID.57.) Petitioner contends that, but for counsel's failure to raise these claims, "there is a reasonable probability that the outcome of the appeal would have been different." (Br. Supp. Am. Pet., ECF No. 10, PageID.100.)

Petitioner raised this claim in his Rule 6.500 motion, and the trial court rejected it, stating:

In this particular case the question is whether appellate counsel made the wrong choices with regard to issues to be brought for appeal. And individuals can differ with regard to appellate strategy; however, the 6.500 process is designed to specifically examine whether in fact the system missed something that resulted in an injustice.

In this particular case I—in looking at the appeals and looking at the arguments raised today with regard to 6.508, this Court is left with the solid impression, conviction that the appellate counsel did not make all of the arguments that were available to her. However, as indicated by the—information that learned counsel has provided to the Court with regard to this motion, but the Court is likewise convinced that those issues as raised were not—issues that are raised are now are not outcome determinative in terms of there being a—an issue that has been raised now that would clearly have determined the innocence of the—or not guilty status of [Petitioner].

To the contrary, the Court believes that while these arguments—while these issues bear fair argument, they are not conducive or persuasive as to the ultimate issue, which is in fact overturning the conviction of [Petitioner] and offering up a new trial.

So as relates to the allegation, the challenge to appellate counsel and the information—or at least the accusation that she was ineffective in her appellate advocacy, the Court finds that she did not—she made strategic decisions as to which arguments to raise at the appellate level, and those arguments that admittedly she did not raise are not outcome determinative, and therefore, the Court will not grant relief based upon ineffective assistance of counsel.

(ECF No. 16-19, PageID.1627–1629.)

As an initial matter, the record reflects that appellate counsel did raise the issue of trial counsel's ineffectiveness with respect to the failure to object to Officer Millard's testimony. In any event, as thoroughly discussed *supra*, grounds III, IV, and V lack merit. Accordingly, appellate counsel's failure to raise such claims "on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003); *see also Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("If trial counsel performed adequately, our inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance of

appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground VI.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal

would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment denying the petition, as well as an order denying Petitioner's request for an evidentiary hearing and a certificate of appealability.

Dated: December 19, 2023                    /s/ Hala Y. Jarbou
                                             HALA Y. JARBOU
                                             CHIEF UNITED STATES DISTRICT JUDGE